UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERAL STAR NATIONAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) 14 C 1821 ) ) Judge Feinerman |
| vs. | ) ) |
| ADAMS VALUATION CORPORATION, DOUGLAS ADAMS, and DIANE GOLDRING NESBITT, | ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

In late 2013, Diane Goldring Nesbitt sued Adams Valuation Corporation and Douglas Adams (together, "Adams"), along with several other individuals and a law partnership, in *Nesbitt v. Regas*, 13 C 8245 (N.D. Ill.) (Tharp, J.). General Star National Insurance Company, which had issued an insurance policy to Adams, then filed this suit against Adams and Nesbitt, seeking a declaration under 28 U.S.C. § 2201 that it has no duty to defend Adams in the *Nesbitt* case. Doc. 1. Subject matter jurisdiction lies under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. General Star has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Doc. 21. Adams opposes the motion, while Nesbitt has remained silent. The motion is granted.

### Background

**A. The Nesbitt Suit**

The *Nesbitt* suit alleges that two of Adams's co-defendants, James Regas and Christian Nesbitt, "engaged in a massive scheme to defraud two banks out of millions of dollars through the making of unsupportable and improper insider loans" and that Adams "actively participated

1

with [them] to effectuate the Scheme," which "involved countless lies, conflicts of interest, material omissions, and criminal acts." Doc. 1-2 at ¶¶ 1, 10. According to the *Nesbitt* complaint, "[a] central part of the Scheme was to cause appraisals of property values to be wildly inflated and then to skim proceeds from the loans that were issued in reliance on the inflated appraisals." *Id*. at ¶ 36. The *Nesbitt* suit alleges that Regas and Christian Nesbitt "used false appraisals prepared by Adams," *id*. at ¶ 30, that Regas "arranged for Adams … to be retained on approximately 50% of the appraisals … during the Scheme," and that Adams and Regas "agreed to overvalue by as much as 30-80% the property appraisals that Adams … performed …, and sometimes more," *id*. at ¶ 36. The *Nesbitt* complaint lists several of those appraisals, *id*. at ¶ 40, and alleges that Regas and Christian Nesbitt "were fully aware of the inflated appraisals that were being prepared by Adams," *id*. at ¶ 41.

Adams is named as a defendant in four counts of the *Nesbitt* complaint. Count I alleges violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Doc. 1-2 at ¶¶ 62-69. That count alleges: "Defendants conducted and participated in, both directly and indirectly, an enterprise. The enterprise was comprised of a group of individuals [including Douglas Adams], one partnership, and one company [Adams Valuation Company], who were associated in fact." *Id*. at ¶ 64. Count I further alleges that "[t]he primary objective of the Racketeering Enterprise was to illegally steal funds belonging to the Banks and to make other unwitting third parties – and not themselves – legally responsible in the event that any of the fraudulent loans, which the Racketeering Enterprise cause the Banks to issue, were not repaid," and that "[t]he RICO Defendants conducted the affairs on the Enterprise through a pattern of racketeering activity, most specifically a series of violations of the United States mail fraud statute, 18 U.S.C. § 1341 … and the United States obstruction of justice statute, 18 U.S.C.

§ 1512(c)(1) ('destroying … or concealing a document with the intent to obstruct justice')." *Id*. at ¶¶ 64-65. Count II alleges a RICO conspiracy under 18 U.S.C. § 1962(d) and incorporates Count I by reference. *Id*. at ¶¶ 70-73. Count V, which asserts a claim for common law fraud, alleges that "[e]ach of the makers of these misrepresentations and/or material omissions knew the statements to be false at the time they were made." *Id*. at ¶ 90. And Count VI alleges that Adams aided and abetted the fraud committed by Regas and certain other co-defendants. *Id*. at ¶¶ 95-104.

B.    **The General Star Policy**

General Star issued a Real Estate Errors and Omissions Liability Insurance Policy to Adams. Doc. 1-1. The policy provides coverage for "all sums which the Insured shall become legally obligated to pay as Damages for Claims … arising out of any act, error, omission, or Personal Injury in the rendering of or failure to render Professional Services by an Insured." *Id*. at 5. The policy defines "claim" as "a demand for money, the filing of Suit or the institution of arbitration or mediation proceedings naming the Insured and alleging an act, error, omission or Personal Injury resulting from the rendering of or failure to render Professional Services." *Id*. at 10. It defines "professional services" in relevant part as "services performed by an Insured in an Insured's capacity as … [an] appraiser of real estate," where "such service is rendered on or behalf of the customer or client in return for a fee, commission, or other compensation." *Id*. at 12. And in the "Exclusions" section, the Policy states in relevant part that it:

> does not apply to Claims: A) Arising out of a dishonest, fraudulent, criminal or malicious act or omission, or intentional misrepresentation, (including, but not limited to, actual or alleged violations of state or federal anti-trust, price-fixing, restraint of trade or deceptive trade practice laws, rules or regulations) committed by, at the direction of, or with the knowledge of any Insured.

*Id*. at 8.

3

**Discussion**

The court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004). The court may consider "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). All facts are considered in the light most favorable to the non-movant. *See United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991).

The parties agree that Illinois law governs, and so that is the law the court will apply. *See McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998). As the Seventh Circuit has explained:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (internal citations omitted). Although ambiguities are construed in the insured's favor, "a court will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *see also Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.,* 435 F.3d 729, 732 (7th Cir. 2006). "Insurers have the burden of proving that an exclusion applies. Insureds, in turn, have the burden to prove that an exception to an exclusion restores coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.,* 611 F.3d 339, 347 (7th Cir. 2010) (citation omitted).

"To determine whether an insurer has a duty to defend its insured, [the court] compare[s] the factual allegations of the underlying complaint … to the language of the insurance policy. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (citations and internal quotation marks omitted). An insurer may decline to defend only when "it is clear from the face of the underlying complaint that the allegations set forth … fail to state facts to bring a case within, or potentially within, the coverage of the policy." *Swiderski Elecs.*, 860 N.E.2d at 315; *see also Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008). That is, "an insurer has no duty to defend unless the underlying claim contains explicit factual allegations that potentially fall within policy coverage." *Microplastics*, 622 F.3d at 810; *see also In re Country Mut. Ins. Co.*, 889 N.E.2d 209, 209-10 (Ill. 2007) ("[B]ecause the duty to defend is gauged by the allegations of the complaint, what the facts subsequently show is immaterial. If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent."); *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. 2001) ("[O]nly the allegations in the underlying complaint, considered in the context of the relevant policy provisions, … should determine whether an insurer owes a duty to defend an action brought against an insured.") (internal quotation marks omitted). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Microplastics*, 622 F.3d at 811 (internal quotation marks omitted).

In seeking judgment on the pleadings, General Star argues that the *Nesbitt* suit "does not allege facts that fall or potentially fall within coverage of the General Star Policy" and, in the

5

alternative, that Exclusion A "plainly excludes coverage." Doc. 21 at ¶¶ 4-5. The second argument is correct, obviating the need to address the first.

As noted above, Exclusion A states that the policy "does not apply to Claims: A) Arising out of a dishonest, fraudulent, criminal or malicious act or omission, or intentional misrepresentation … committed by, at the direction of, or with the knowledge of any Insured." Doc. 1-1 at 8. By asserting RICO claims against Adams, the *Nesbitt* complaint necessarily alleges that Adams committed or agreed to commit criminal acts. A § 1962(c) plaintiff "must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (internal quotation marks omitted). A § 1962(d) plaintiff must show "that (1) the defendants agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendants further agreed that someone would commit at least two predicate acts to accomplish these goals." *Empress Casino Joliet Corp. v. Johnston*, __ F.3d __, 2014 WL 3973723 at *11 (7th Cir. Aug. 15, 2014) (internal quotation marks omitted). Both RICO claims require a showing that Adams committed or agreed to engage in a pattern of "racketeering activity," a term the RICO statute "define[s] in terms of a long list of crimes." *United States v. Benabe*, 654 F.3d 753, 776 (7th Cir. 2011) (citing 18 U.S.C. § 1961(1)). And by asserting fraud and aiding-and-abetting fraud claims against Adams, the *Nesbitt* complaint necessarily alleges that Adams committed and assisted others in committing dishonest or fraudulent acts or omissions or intentional misrepresentations. *See People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992) (holding that a common law fraud plaintiff must allege "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in

6

reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance") (internal quotation marks omitted); *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 434 (7th Cir. 1996) (same); *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. 2003) (holding that an aiding-and-abetting-fraud plaintiff must allege that: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation") (internal quotation marks omitted).

Because the RICO and fraud claims against Adams in *Nesbitt* necessarily allege dishonest, fraudulent, criminal, or malicious acts or omissions, or intentional misrepresentations, committed by or with Adams's knowledge, the claims all fall within the scope of Exclusion A. Adams disputes this conclusion, citing the principle that in deciding whether an insurer has a duty to defend, the court "should not simply look to the particular legal theories pursued by the [plaintiff in the underlying lawsuit], but must focus on the allegedly tortious conduct on which the lawsuit is based." *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 613 (7th Cir. 2010) (internal quotation marks omitted); *see also Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, 500 F.3d 640, 644 (7th Cir. 2007) ("The important question is therefore whether the tendered complaint alleges facts that, if proved, would show that the insured has committed acts that fall within the policy's coverage."). That venerable principle certainly applies where the legal claims in the underlying suit could, depending on the particular factual allegations, fall either within or without an exclusion. An example is *Connecticut Indemnity Co. v. DER Travel Service, Inc.*, 328 F.3d 347 (7th Cir. 2003), where the policy excluded coverage for "liability arising out of any act, error, or omission which is wilfully dishonest, fraudulent, or

7

malicious, or in willful violation of any penal or criminal statute or ordinance, and is committed (or omitted) by or with the knowledge or consent of the 'insured,'" *id*. at 348, and the underlying complaint stated a claim under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/2, which could be alleged either as negligence or as intentional fraud, *id*. at 348, 350. In such circumstances, the court must examine the specific factual allegations of the underlying complaint to determine whether only intentional fraud is being alleged; as the Seventh Circuit put it: "While … negligent conduct is actionable under the Consumer Fraud Act, it is the actual complaint, not some hypothetical version, that must be considered." *Id*. at 350-51; *see also Del Monte*, 500 F.3d at 645-46.

By contrast to the ICFA claims in *DER Travel Service*, the RICO and common law fraud claims against Adams, by their very nature, allege the kind of misconduct covered by Exclusion A. There is no "hypothetical version" of those torts that could possibly fall outside the exclusion. It follows that the principle cited by Adams—that a court "should not simply look to the particular legal theories pursued by the [plaintiff in the underlying lawsuit], but must focus on the allegedly tortious conduct on which the lawsuit is based," *Avent Am.*, 612 F.3d at 613 (internal quotation marks omitted)—does not fit this case. *See Twin City Fire Ins. Co. v. Somer*, 794 N.E. 2d 958, 964 (Ill. App. 2003) (holding that where "the underlying complaint essentially states two causes of action, breach of fiduciary duty and intentional fraud," and where "breach of fiduciary duty and fraud were specifically excluded in items (e) and (f) of the general exclusions section of the policy," "the allegations of the … complaint did not fall within, or potentially within, the policy's coverage"); *Ill. Farmers Ins. Co. v. Preston*, 505 N.E. 2d 1343, 1346-47 (Ill. App. 1987) (holding that the insurer had duty to defend where the policy excluded "coverage for bodily injury '[a]rising as a result of intentional acts of an insured,'" and where the underlying

complaint alleged only intentional misconduct) (brackets in original); *United Fire and Cas. Co. v. Jim Maloof Realty, Inc.*, 425 N.E.2d 496, 497-98 (Ill. App. 1982) (holding that there was no duty to defend where "the factual allegations of the complaint are premised upon only one theory of recovery, that of intentional fraud," and the policy excluded coverage for "dishonesty, intentional fraud, criminal or malicious act, libel or slander"); *Axiom Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*, 876 F. Supp. 1005, 1016-17 (N.D. Ill. 2012) (holding that there was no duty to defend a suit that could "only be read as necessarily arising from a breach of contract claim" where the policy excluded coverage for breach of contract claims).

Even if that principle did apply here, General Star would still be entitled to judgment on the pleadings. The reason is that the *Nesbitt* complaint's claims against Adams all rest on specific factual allegations against Adams—which are described in detail above, and which, simply stated, charge that Adams actively participated in a massive scheme to defraud banks out of millions of dollars by intentionally preparing intentionally inflated appraisals—that plainly allege dishonest, fraudulent, criminal, or malicious acts or omissions, or intentional misrepresentations, committed by or with Adams's knowledge. *See Del Monte Fresh Produce*, 500 F.3d at 644 ("[P]hrases such as 'mislead and conceal,' 'scheme or device,' and 'intentionally and willfully' are the paradigm of intentional conduct and the antithesis of negligent actions.") (quoting *DER Travel Serv.*, 328 F.3d at 351); *W. Bend Mut. Ins. Co. v. Crichton*, 319 F. Supp. 2d 887, 889 (N.D. Ill. 2004) ("There is no such thing as accidental participation in a conspiracy."). Because "it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage," *DER Travel Serv.*, 328 F.3d at 349 (internal quotation marks omitted), General Star has no duty to defend. *See Gen. Star Nat'l Ins. Co. v. Adams Valuation Corp.*, 2014 WL 479759 at *6 (N.D. Ill. Feb. 6,

2014) (holding that General Star has no duty to defend Adams in a related False Claims Act suit alleging that Adams knowingly made a false statement to the government in order to receive money, reasoning that the suit "undoubtedly falls under the Insurance Policy's exception for dishonest acts, omissions, or intentional misrepresentations allegedly in violation of federal law"); *Crichton*, 319 F. Supp. 2d at 889 (holding that the insurer had no duty to defend where the policy excluded coverage for acts intended to cause injury and the underlying claim alleged racketeering and conspiracy).

Before concluding, the court notes that Adams sets forth three affirmative defenses in this case—waiver, estoppel, and statutory preclusion. Doc. 19 at pp. 17-18. Adams's response brief mentions those defenses in a footnote, Doc. 29 at 5 n.1, but Adams does not argue that they forestall judgment on the pleadings, so any such argument is forfeited. *See Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011); *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006).

Adams also argues, again in a footnote, that General Star's suit is premature because motions to dismiss remain pending in *Nesbitt*, making it possible that Nesbitt may amend her complaint. Doc. 29 at 5 n.2. In so arguing, Adams cites no authority for the proposition that an insurer is precluded from obtaining a declaration on its duty to defend so long the underlying plaintiff retains the ability to amend her pleadings; the one case cited (though not pin-cited) by Adams, *Maryland Casualty Co. v. Peppers*, 355 N.E.2d 24 (Ill. 1976), does not speak to that issue. That proposition makes little sense in any event. Illinois law allows plaintiffs to amend their complaints until final judgment. *See* 735 ILCS 5/2-616(a) ("At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of

10

action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim."). So if Adams were right, then an insurer would have to wait until final judgment in the underlying case before seeking a declaration that it has (or, actually, had) no duty to defend; that is not the law. By the same token, the declaration granted in this case applies only to the pleadings that have already been filed in *Nesbitt*; it does not speak, one way or the other, to whether General Star would have a duty to defend Adams in the event Nesbitt substantively amends her complaint in that case.

## Conclusion

For the foregoing reasons, General Star's motion for judgment on the pleadings is granted. The court declares that General Star has no duty to defend Adams Valuation Corporation or Douglas Adams in *Nesbitt v. Regas*, 13 C 8245 (N.D. Ill.), based on the pleadings that have been filed to date in that case.

September 23, 2014

United States District Judge